ATLANTIC DE LAINE COMPANY *v.* EARL P. MASON & others.

EARL P. MASON & others *v.* ATLANTIC DE LAINE COMPANY.

Paid corporate stock cannot be assessed without special authority in the charter or by statute.

A clause in the charter of a manufacturing corporation, "that the shares in said capital stock shall not be liable to assessment after the capital stock so fixed in amount as aforesaid has been paid in, except in equal proportions, and by the consent of the stockholders owning at least three fourths of the shares of the capital stock of the corporation," authorizes a further assessment of paid stock, only upon the basis, that the capital stock, fixed in amount by the charter, has been subscribed for and actually paid in.

An illegal assessment upon corporate stock cannot be made good, upon the footing of contract, from an assent, to be presumed from assent to former illegal assessments of lesser amount; nor can such assent be given with effect by an assignor of stock, after an assignment of the stock and notice of the assignment given to the corporation.

An assessment upon paid stock, when authorized by charter, can be made, at a special meeting, only when notice is duly given to the stockholders of the purpose of the meeting; nor does a clause in the charter declaring, that "all or any business of the corporation may be transacted, or acted on," at such a meeting, nor a by-law, passed in pursuance of the charter, prescribing how notice of special meetings shall be served upon the stockholders, dispense with the necessity of specifying, in such case, the purpose, in the notice of the meeting.

BILLS IN EQUITY, in the nature of cross-bills, for an account; the one, filed by the Atlantic De Laine Company, a manufacturing corporation, for an account of certain dividends due to them on five promissory notes made by the firm of Hill, Carpenter & Co., and amounting on the face to $18,000, out of the effects of that firm, assigned to the defendants for the benefit of creditors; and the other, filed by said assignees against the De Laine Company for an account of thirty shares of the corporate stock of that company, formerly standing in the name of Hill, Carpenter & Co., and which the bill alleged had been sold for illegal assessments by the company and converted to its own use.

The answer of the assignees, to the bill filed against them, admitted the notes to be due by their assignors,—the assignment, and assigned effects sufficient to pay the notes, after a proper allowance for the value of the stock of their assignors, illegally sold and converted by the company.

From the bill and answer in the case of the assignees against the De Laine Company, the case being heard upon bill and answer, it appeared, that the De Laine Company was incorporated in May, 1851, with a capital not to exceed $500,000, divided into shares of $1,000 each; the amount of the capital to be fixed by a vote of the company, and actually fixed by such vote at $300,000; that two hundred and eighty-seven only of the three hundred shares composing the capital had been subscribed for, and but one hundred and twenty-three, or thereabouts, of these had been actually paid in, amongst which, however, were the thirty shares of Hill, Carpenter & Co.; that, at various times, owing to the embarrassment and failure of original subscribers to the stock, money was raised by the company by loan and otherwise to enable it to carry on its business, and the stock of insolvent holders taken by it; that by common consent of the stockholders who had paid in their stock, including Hill, Carpenter & Co., various votes assessing the paid stock had been passed, with a view to pay the debts of the company, which, however, had never been carried into effect; that in this state of things, Hill, Carpenter & Co., in December, 1854, failed, and assigned their thirty shares of the stock, together with their other partnership property, to the complainants for the benefit of their creditors, of which assignment the De Laine Company had due notice; and that, at a special meeting of the company held on the 6th day of October, 1855, at which neither Hill, Carpenter & Co. nor their assignees were present, and of the purpose of which they had no notice, all former votes assessing the paid stock were rescinded, and an assessment was laid on such stock of $360 per share. For non-payment of this assessment by Hill, Carpenter & Co., or their assignees, their thirty shares were sold at auction by the company, and bought on his own account by George W. Chapin, Esq., their treasurer. The answer of the company alleged, in support of the legality of this assessment, an understanding on the part of those holding the paid stock, including Hill, Carpenter & Co., that, notwithstanding the whole capital stock was not paid in, the said company should have the right to assess the shares of holders of paid stock to an amount suffi-

cient to pay the debts of the company, and to enable it to carry on its business.

The 2d section of the charter of the De Laine Company, after providing for the amount of the capital stock of the company, the number of shares, and how to be transferred, and that no stockholder should transfer his stock without first giving the refusal of the same to the company at the price for which he was willing to sell it, further provided, *" that the shares in said capital stock shall not be liable to assessment, after the capital stock, so fixed in amount, has been paid in, except in equal proportions, and by consent of the stockholders owning at least three fourths of the shares of the capital stock of the corporation."*

The 4th section of the charter pledged the stock of each stockholder to the corporation for all debts and demands due and owing from him to the corporation, whether arising from assessments or instalments, or in any other manner, and provided a mode of selling the stock for the redemption of the pledge, as well as gave to the corporation an action to recover the balance of the debt or demand, unsatisfied by the proceeds of sale.

The 3d section of the charter, amongst other things, provided : " Special meetings may be called at any time by the treasurer, and in case of his absence, neglect, inability, or refusal, by stockholders holding one fifth of the shares of the capital stock, and shall be notified in the manner to be prescribed by the by-laws of the corporation.   All or any business of the corporation may be transacted, and acted on, at any legal meeting thereof; and each stockholder, at all meetings of the corporation, shall, in person or by proxy duly authorized in writing, be entitled to one vote for each and every share by him owned, not exceeding fifty shares, and to one additional vote for every ten shares over and above said fifty shares ; and the holders of one hundred shares, with the president or treasurer, shall constitute a quorum."

Article 8 of the by-laws, was as follows : " All meetings of the corporation shall be called by the treasurer, at least six days prior to said meeting, by depositing notices thereof in the post-

office at Providence, addressed to each stockholder, or by leaving them at their place of business or abode."

The two cases were heard together; the contest being confined to the case of Mason and others against the De Laine Company.

*H. S. Bartlett* and *T. A. Jenckes*, for *complainants*, submitted the following points :—

1st. The Atlantic De Laine Company, having fixed the amount of their capital stock at $300,000, had no power, either by the act of incorporation, or by the by-laws made under and in accordance with that act, to make any assessment on the shares of stock subscribed for, until the whole amount of said capital stock had been subscribed for and paid in.

The power of corporations is derived only from the act, grant, or charter by which they are created, and no act or vote of a corporation can enlarge its chartered authority, either as to the subjects on which it is intended to operate, or the persons or property of the corporation. *Salem Mill-Dam Corp.* v. *Ropes*, 6 Pick. 23 ; *Perrine* v. *Chesapeake and Delaware Canal Co.* 9 How. (U. S.) 172.

The power to make assessments on stock, is clearly *not incident* to any corporation. Angell and Ames on Corp. § 544.

The act of incorporation, in this case, makes provision for assessment, only, when the full amount of the capital shall have been paid in. The assessment, in this case, was clearly unjust and illegal, because not authorized by the only source from which authority could be derived. Unless the power to assess, before the whole amount of the capital stock was paid in, was expressly conferred on it, it could not exercise such a power.

It has been expressly decided, that a corporation is limited in the exercise of its powers, to those which are especially conferred upon it; and that even where a power was conferred on a corporation, to levy a tax to defray the " necessary expenses of said corporation," it did not authorize a tax to meet certain liabilities of the corporation. *Lessee of A. Knowles* v. *Beatty*, 1 McLean, 41.

It is admitted by the respondent corporation, that the whole

of this stock has not been subscribed for, and that a much smaller amount than even that subscribed for has been paid in. A proper construction of the act of incorporation, would of itself, be sufficient to make this assessment invalid, and its collection by a sale of the shares in the hands of those refusing to pay it, unjust and illegal.  To this is added, the general principle, fully sustained by authority, that an assessment before the full capital stock is subscribed for is not valid.  See Angell and Ames on Corp. § 543, *et seq.; Salem Mill-Dam Corp.* v. *Ropes*, 6 Pick. 23 ; *Ibid.* 9 Ib. 187 ; *Proprietors of Newburyport Bridge* v. *Story*, 6 Ib. 45 ; *Central Turnpike Co.* v. *Valentine*, 10 Ib. 142 ; *Worcester and Nashua R. R. Co.* v. *Hinds*, 8 Cush. 110 ; *Littleton Manuf. Co.* v. *Parker*, 14 N. H. 543 ; *Oldtown and Lincoln R. R. Co.* v. *Veazie*, 39 Maine, (4 Heath,) 571 ; *Stoneham* v. *Eastern R. R. Co.* 2 Gray, 277.

The mode in which the corporation could assess the stock was provided by the act of incorporation.  Where a power is thus given by charter, the corporation can only execute that power in the mode therein prescribed.  A resolution by the stockholders does not bind it; it can only act in the manner provided by its charter.  Corporate powers cannot be created by implication nor extended by construction.  *Farmer's Loan and Trust Co.* v. *Carroll*, 5 Barb. Sup. Ct. 613 ; *McCullough* v. *Moss*, 5 Denio, 567 ; *Cabot and W. Springfield Bridge* v. *Chapin*, 6 Cush. 50 ; *Pennsylvania R. R. Co.* v. *Canal Commmissioners*, 21 Penn. (9 Harris,) 9.

It is averred in the bill, and not denied in the answer, that certificates for but one hundred and twenty-three shares of stock had ever been issued.  That being the case, the essential qualification of the power to make assessments, namely, that none should be made until all the capital stock had been paid in, and not then *without the consent of stockholders owning, at least, three fourths of the capital stock,* was not, and could not have been complied with.  Until all the prerequisites of a charter have been complied with, assessments cannot be recovered from stockholders.  *Banet* v. *Alton and Sagamon R. R. Co.* 13 Ill. 504.

2d. The absence of notice to the firm of Hill, Carpenter &

Co., or to these complainants, of the intended assessment, or of the meeting at which said assessment was made, renders the assessment illegal and invalid.

The meeting at which the assessment was made, was a special meeting, not holden at the time fixed for the regular meetings of the corporation.   Its object was to do an act of the utmost importance to all the stockholders, and express notice of it was imperatively required.   The absence of such notice, certainly, renders the proceedings void, as regards these complainants.   See 'Angell and Ames on Corp. §§ 489, 495.

A vote was passed at this meeting, by which the stockholders were made debtors to the corporation.   In such a case, even though legal notice might have been given, those stockholders who were not present would not be bound by the vote.   *American Bank et al.* v. *Baker et al.* 4 Met. 164; and see generally the cases cited in Angell and Ames on Corp. *ubi sup.*

Even were the legality of this assessment admitted, the question would still remain, whether, in view of the circumstances under which the meeting at which the vote making it was passed, was convened, it can be collected on the shares standing in the name of Hill, Carpenter & Co.   The purpose of the meeting was extraordinary, was important, was of great moment.   Resolutions passed at former meetings were rescinded, and new ones adopted.   Under this state of facts; these complainants should not be held liable for the amount of the assessment.

3d.  The firm of Hill, Carpenter & Co. having paid the full amount of the shares of stock, for which they had subscribed, the Atlantic De Laine Company could not make them liable for any further assessments, except by obtaining their express agreement and consent.   See, as to the principle governing and controlling the power of a corporation to assess, Angell and Ames on Corp. § 544.

By the act of incorporation, the power of this corporation to assess, and the mode in which that power is to be exercised, are expressly defined.   A corporation cannot, unless by the express agreement of its corporators, exercise any power over them beyond that conferred by its charter.   *Worster* v. *Muscogee R. R. Co.* 11 Geo. 438.

A subscriber cannot be made liable for assessments, unless there has been an express promise, on his part, to pay. *Fort Edward and Fort Miller Plank R. R. Co.* v. *Paine*, 17 Barb. 567.

In this case, the absence of any such promise is plainly admitted. The stock of Hill, Carpenter & Co. was not represented at the meeting at which the assessment was made; they refused to pay it, on the express ground, that they had not agreed to its being made, and that the sale of their stock was made under protest of its illegality. It it clearly established by adjudicated cases, that without an express promise to pay, assessments cannot be recovered. See *Kennebec and Portland R. R. Co.* v. *Kendall*, 31 Maine, 370.

*Payne* and *R. W. Greene*, for respondents :—

1st. Whether the assignment was valid may depend upon the construction of the charter. We contend, that the limitation upon the power of assignment applies only to the state of things after all the capital stock shall have been subscribed for and paid in, and not to this case, where, after the amount of stock had been fixed and only a part subscribed for, and only a portion of that which was subscribed for had been paid in, the stockholders who have subscribed and paid their subscriptions proceed to do business as a corporation. In such a case, we claim, that the corporation has power to make such assessments as will enable it to carry on business and pay its debts.

2d. But whether this is so, or not, the averments in the answer show, (1.) That with a full knowledge that only a portion of stock was subscribed for or paid in, the company, including Hill, Carpenter & Co., under the management of a board of directors, of which Carpenter was one, proceeded to do business, and contracted large debts, the principal part of them through the agency of Hill, Carpenter & Co., and in great part through the mismanagement of Hill, Carpenter & Co., which debts could only be paid by assessments. (2.) That Hill, Carpenter & Co. were present at meetings of the company at which assessments were made. (3.) That the assessment complained of was to take the place of others which had been assented to, not to say urged, by Hill, Carpenter & Co.

In this state of things, we say, that the assessment was legal

and valid, and that, at all events, neither Hill, Carpenter & Co. nor their assignees can deny that it is valid and legal.

3d. That the sale was regular.

4th. But admitting that the sale was illegal and void, this furnishes no reason why there should not be a decree for the payment of the notes. In this·view, the title to the stock is still in Hill, Carpenter & Co. or their assignees, and the fact that they are stockholders is no reason for refusing to pay their debts to the company.

5th. If it does, the stock was worth no more than it sold for, and that amount we have accounted for.

Ames, C. J. The assessment, to satisfy which the stock of Messrs. Hill, Carpenter & Co. was sold by the De Laine Company, was illegal, and in consequence, the sale void, upon the double ground, of want of authority in the corporation to make it, and want of proper notice of the special meeting at which it was made. No further assessment can be imposed upon paid stock, without special authority in the charter, or by statute warranting it. Any other doctrine, in application to a subscription for a definite number of shares of an amount fixed by charter, would disappoint the contract of a subscriber and stockholder, and his just calculations founded upon it, it might be, to his ruin. The latter clause of the second section of the charter of the De Laine Company does indeed contemplate, to meet the exigencies of their. business, such further assessment; but it does so, only upon the basis, that the capital stock, fixed in amount by the charter and actually paid in, has proved insufficient to carry on the business of the corporation; when, the assessment is to be laid in equal proportions, and by the consent of the stockholders owning at least three fourths of the shares of such capital stock. The main cause of embarrassment in this case, probably was, that 'not only was not the capital stock, contemplated by the charter and by-laws, subscribed for, but that comparatively only a small portion, less than half, was paid in; and at all events, under such circumstances, the section gives no authority to the company, who seem to have started a a large business upon a small and insufficient capital paid in, contrary to their charter and by-laws, to remedy the embarrass-

ment thus caused, by further assessments *in invitum* upon paid stock. The charter remedy is, to issue stock to those willing to buy, to the amount required; not to compel, in substance, those who have subscribed and paid for thirty shares, to take, whether they will or not, forty or sixty shares, in the shape of further assessments.

It is said that this objectionable course was pursued by the De Laine Company with the assent of Hill, Carpenter & Co., prior to the failure of that firm; and that two or more assessments were laid, though not enforced, by votes in which they concurred. It is enough to say, that neither they, nor their assignees, were present at, or in any mode assented to, the assessment of $360 per share laid by the company at the special meeting held on the 6th of October, 1855; nor can the assent of either, to one illegal assessment, be ground for presuming an assent to another of much larger amount, so as to make it binding by way of contract. Indeed, the power of Hill, Carpenter & Co. to authorize such assessments would seem to be wholly gone after an assignment of their stock to the complainants, and notice of such assignment to the De Laine Company.

But if the company had, under their charter, power, further to assess the paid shares of Hill, Carpenter & Co., it could only be at a corporate meeting duly notified for such a purpose; and the general rule is well settled, that an act of such importance cannot be done, at a special corporate meeting, unless the stockholders are duly notified of the purpose of the meeting, so that they can attend and vote upon a matter so interesting to them. The clauses of the charter and by-laws of the company to which we have been referred, do not, as it seems to us, except the special meetings of this corporation out of the general rule. The third section of the charter, after fixing the time of the charter, or annual, meeting, for the election of officers, goes on to provide, that in case of failure then to elect them, they may be elected at any subsequent legal meeting holden within a year; and that, at special meetings, "all or any business of the corporation may be transacted or acted on;" and the 8th article of the by-laws, passed to carry out the charter requirement, that such meetings "shall

be notified in the manner to be prescribed by the by-laws of the corporation," relates merely to the mode of serving notice, and, by its silence, refers us to the general law, as to what the notice shall contain.

The complainants are entitled, against the De Laine Company, to an account of the value of the stock illegally sold, not reckoning, of course, the value added to it by the paid assessments of other stockholders ; and the case must go to a master to ascertain the value at the time of the illegal sale, which, with interest, we shall allow, by way of equitable set-off, to be retained by the assignees out of the dividends due from the assigned estate to the De Laine Company ; and the bill of the company, for an account of these dividends, must wait until the coming in of the master's report.